# Exhibit H

# HiCon USA Distribution Agreement

THIS AGREEMENT made this **23rd** day of **August, 2017**, by and between

**HiCon,** a company duly organized and exiting under the laws of **South Korea**, having its registered office at **9th Floor, Star Tower, 37, Sagimakgol-ro 62-gil, Jungwon-gu, Seongnam-city, Gyeonggi-do, Korea, 13211** (hereinafter referred to as "HiCon")

And

**HiCon USA,** a limited liability company, having its registered office at **1335 N. Hobson Road, Gilbert, Arizona 85233** (hereinafter referred to as "Distributor")

### WITNESSETH:

WHEREAS, **HiCon** has been in the business of developing, manufacturing and selling throughout the world, and is desirous of promoting and developing its activities for sales of burn in and test products (hereinafter referred to as "Products", stipulated in SCHEDULE A hereof.), to companies in United State of America, Canada and Mexico (hereinafter referred to as "Territory", stipulated in Article 3.1), and for such purpose, seeks cooperation and assistance;

WHEREAS, **Distributor** wishes to become the exclusive distributor for Products for HiCon throughout the Territory. As such exclusive distributor, Distributor will purchase the Products from HiCon and will market and re-sell the Products throughout the Territory; and

WHEREAS, **HiCon** and **Distributor** understand that this agreement acts as a guideline to initiate business relationship between both Parties; this agreement shall establish basic terms and conditions that shall first be acknowledged by both Parties, but such conditions shall not be limited to the following;

NOW, THEREFORE, for good and valuable consideration, including the mutual obligations set forth herein, the Parties agree as follows:

## ARTICLE 1. ENGAGEMENT

1.1. Appointment and Acceptance.
   Subject to the terms and conditions of this Agreement, **HiCon** hereby appoints the **Distributor** as its exclusive distributor to market and promote the sale of its Products, and to solicit purchase orders for the Products, in the Territory.

1.2. Restrictions on **Distributor**'s Activities.
   **Distributor** shall not: i) engage in any promotional activities relating to the Products directed primarily to customers outside the Territory, ii) solicit orders for Products from any prospective customer located outside the Territory.

1.3. Restrictions on **HiCon**'s Activities.
   **HiCon** shall not, and shall procure an undertaking from its agents or other intermediaries for territories other than the Territory that they will not: i) engage in any promotional activities (except promotional activities through worldwide

events held in Territory, such as BiTS USA and Semicon West) relating to the Products directed primarily to customers in the Territory, (ii) solicit orders for Products from any prospective customer located in the Territory.

## ARTICLE 2. LEGAL RELATIONSHIP

The relationship between **HiCon** and **Distributor** shall at all times be that of supplier and Distributor. Under no circumstances shall **Distributor** be considered as an agency of **HiCon**. **Distributor** shall have no right or authority to enter into any contractual obligations or make any representation in the name of or on behalf of **HiCon**.

## ARTICLE 3. TERRITORY

3.1. **Distributor**'s Territory shall consist of United State of America, Canada and Mexico.

3.2. **HiCon** agrees to exclusively appoint Distributor to import, sell and distribute Products within the Territory in accordance with the terms and conditions of this Agreement, unless otherwise stated.

3.3. **Distributor** agrees not to sell any of the Products outside the territory except as may be authorized with HiCon relating to such other territories. If Products are qualified and purchased for sale and shipped by HiCon to HiCon customers inside the Territory [REDACTED] Distributor shall be entitled to a payment as shown on Schedule B.

3.4. For newly developed products that were not in production for sale at the time of this Agreement, **HiCon** shall have the right to determine whether to include such product as "Product", that grants Distributor the right to have exclusivity to sell within the territory.

[REDACTED]

## ARTICLE 4. TRADEMARKS

4.1. Ownership. The **Distributor** acknowledges **HiCon's** exclusive ownership of the Trademarks and acquires no right, title or interest in or to the Trademarks hereunder. Any and all goodwill associated with the Trademarks will inure exclusively to the benefit of **HiCon**. During the Term, **Distributor** shall not attempt to register any of the Trademarks or any trademarks, service marks, logos, brand names, trade names, domain names and/or slogans confusingly similar to the Trademarks. **Distributor** shall execute such documents and do all such acts and things as may be necessary in **HiCon**'s reasonable opinion to establish **HiCon**'s ownership of any rights in and to the Trademarks, at **HiCon**'s expense.

4.2. Grant of Rights. **HiCon** hereby grants to **Distributor** for the Term, and subject to the terms and conditions herein, a non-exclusive, non-transferable, revocable right to use the Trademarks in connection with the marketing and promotion of the Products in the Territory in accordance with the terms and conditions of this Agreement. During the Term, **Distributor** shall have the right to indicate to the public that it is an authorized Distributor of the Products.

## ARTICLE 5. DISTRIBUTOR OBLIGATIONS

In addition to such other duties and obligations as are set forth in this Agreement, **Distributor** shall:

5.1. Diligently market and promote the Products, and solicit purchase orders for the Products, within the Territory;
5.2. Maintain in the Territory an office and an adequately trained sales force knowledgeable of the Products;
5.3. Assist **HiCon** in providing support services to customers of the Products in the Territory;
5.4. Fully and promptly answer all communications from **HiCon** and its customers in the Territory;

5.5. Prepare, maintain, and submit to **HiCon** on a timely basis, all documentation and reports reasonably required from time to time to be prepared, maintained or submitted, including but not limited to, the following: (i) a database of information on current and prospective customers, (ii) a quarterly report concerning current and prospective customers, actual or pending purchase orders, competitor's products and technology, trade conditions within the Territory and related matters. (iii) If any suspicious actions or products of competitors that infringe **HiCon's** patents are noted, **Distributor** shall immediately notify **HiCon** and start corrective actions with **HiCon**.

5.7 Distributor warrants to **HiCon** that **Distributor** shall not distribute, sell, promote, or market any lines or products that directly compete with the Products, to any customers under above stated **Distributor**'s Trade Mark (**HiCon USA**), while and after termination of term of this agreement.

## ARTICLE 6. HICON OBLIGATIONS

In addition to such other duties and obligations as are set forth in this Agreement, **HiCon** shall:

6.1. Assist **Distributor** by providing an adequate supply of Product data sheets, price lists, catalogues and other promotional literature at no charge to the **Distributor**;

6.2. Cooperate with Distributor in establishing efficient promotional procedures and policies;

6.3. Provide Product training and field sales support to **Distributor**'s sales force at no charge to **Distributor**, with the frequency and content of the training to be determined by **HiCon**;

6.4. **HiCon** shall be solely responsible for the design, development, supply, production and performance of its products and the protection of its patents, trademarks and trade names. **HiCon** agrees to indemnify and hold **Distributor** harmless from and against and to pay all losses, costs, damages or expenses whatsoever, which **Distributor** may sustain or incur on account of infringement or alleged infringement of patents, trademarks, or trade names, or breach of warranty in any way resulting from the sale of **HiCon**'s products.

## ARTICLE 7. Term of sales

7.1 **Distributor** will request quotes from **HiCon** for products.

7.2. **Distributor** shall make the payment based on the payment term, 100% T/T 90days after receiving invoices from **HiCon.**

7.3 **HiCon** shall provide **Distributor** after sales support.

7.5 Except duly provided for otherwise, shipping condition shall follow conditions of Ex-Work.

## ARTICLE 8. CONFIDENTIALITY

Except as expressly provided herein, the parties agree that, during the Term of this Agreement and for seven (7) years thereafter, each Party will maintain in confidence, will not publish or disclose to any third party, and will maintain in confidence, will not publish or disclose to any third party, and will not use for any purpose, any Confidential Information

furnished to it by the other Party hereto pursuant to this Agreement.

## ARTICLE 9. DURATION

This Agreement is valid and in full force from the date first above written until July 1st, 2018 and shall be automatically extended for another year on each subsequent July 1st, unless either party notifies the termination to the other party at 60 days prior to the expiration date.

## ARTICLE 10. TERMINATION

10.1. Either party may terminate this Agreement forthwith by notice to the other party if such other party fails to perform any of its material obligations under this Agreement and such failure is not cured within sixty (60) days after notice thereof.
10.2. HiCon shall have the right to give a written notice of termination of this agreement to Distributor within ninety days after the end of each Term where Distributor has failed to meet 75% of the Forecast.
10.3. Upon termination of this Agreement for any reason, all distribution rights granted to Distributor hereunder will immediately cease and the Parties will promptly comply with the general termination obligations.

## ARTICLE 11. GENERAL PROVISIONS

11.1. This Agreement and related sales documentation constitutes the entire agreement and understanding of the parties hereto with respect to the subject matter of this Agreement, and supersedes all prior discussions, agreements and understandings between the parties with respect to such subject.
11.2 No amendment or modifications of this Agreement shall be binding on the parties unless made in writing expressly referring to this Agreement and signed by an authorized representative of each party.
11.3. Neither this Agreement nor any rights or obligations hereunder shall be assignable by either party hereto without prior consent of the other party.
11.4. The formation, validity, construction and performance of this Agreement shall be governed by the laws of The State of Arizona
11.5. The parties hereby consent to personal jurisdiction of the American Arbitration Association in Phoenix, Arizona.
11.6. The decision of the arbitrator shall be final and binding upon the parties both as to law and to fact, and shall not be appealable to any court in any jurisdiction. The expenses of the arbitrator shall be shared equally by the parties, unless the arbitrator determines that the expenses shall be otherwise assessed. IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their duly authorized representatives as of the day and year first above written.

**HiCon**
By: Hwang Dong Weon

Title: President and CEO

**HiCon USA, LLC:**
By: Paul Schubring

Title: President and COO