JOHN RUSSELL EMERSON (*pro hac vice*)
(russ.emerson@haynesboone.com)
STEPHANIE N. SIVINSKI (*pro hac vice*)
(stephanie.sivinski@haynesboone.com)
JAMIE RAJU (*pro hac vice*)
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: (214) 651-5000
Fax: (214) 200-0615

Attorneys for Defendants HighRel, Inc.; HiCon
USA LLC; Hwang; and Schubring

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Plastronics Socket Partners, Ltd.; Plastronics H-Pin, Ltd. | Case No. CV-18-03201-P-SPL |
| Plaintiffs, | **MOTION TO DISMISS CLAIMS AGAINST HIGHREL AND HICON USA FOR LACK OF SUBJECT-MATTER JURISDICTION AND MEMORANDUM IN SUPPORT** |
| v. | |
| HighRel, Inc., HiCon USA, LLC; Dong Weon Hwang; and Paul Schubring | |
| Defendants. | |

Defendants HighRel, Inc. ("HighRel") and HiCon USA, LLC ("HiCon USA") (collectively, "Defendants")[1] respectfully move the Court to dismiss Plastronics Socket Partners, Ltd.'s and Plastronics H-Pin., Ltd.'s (collectively, "Plastronics") First Amended Complaint (Dkt. 11) as to HighRel and HiCon USA under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. As discussed below, the Plastronics plaintiffs lack standing to bring their patent-infringement claims against Defendants. Accordingly, this Court lacks subject-matter jurisdiction over those claims. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340-42 (2006) ("The 'core component' of the requirement that a litigant have

---

[1] Only Defendants HighRel, Inc. and HiCon USA, LLC bring this motion. Defendants Paul Schubring and Dong Weon Hwang do not join this request for relief as there are no patent infringement claims against them pending here.

1    standing to invoke the authority of a federal court 'is an essential and unchanging part of the

2    case-or-controversy requirement of Article III.'" (quoting *Lujan v. Defenders of Wildlife*, 504

3    U.S. 555, 560 (1992))). Plastronics also asserts tortious interference with business expectancy

4    against HighRel and HiCon USA based on their alleged patent infringement. But without a

5    valid claim for the underlying improper conduct, Plastronics cannot maintain its tortious-

6    interference claims. Lacking subject-matter jurisdiction, the Court should dismiss the First

7    Amended Complaint as to HighRel and HiCon USA.

8    ## I.    INTRODUCTION

9         It is well established that a patent co-owner must join all other co-owners to have

10   prudential standing to bring an infringement suit.  *STC.UNM v. Intel Corp.*, 754 F.3d 940, 944

11   (Fed. Cir. 2014).  And as Plastronics' First Amended Complaint acknowledges, neither of the

12   plaintiffs is, or ever has been, the exclusive owner of U.S. Patent No. 7,025,602 ("the '602

13   Patent"). Before issuance, inventor Dong Weon Hwang assigned half the rights to the

14   application leading to the '602 Patent to Plastronics Socket. Dkt. 11 (Plastronics' First Am.

15   Compl.) ¶¶ 9, 41; Ex. A (Assignment & Agmt.) ¶¶ 2-3. Mr. Hwang retained the remaining

16   half of all rights. Dkt. 11 ¶¶ 9, 41; Ex. A ¶¶ 2-3. In December 2012, Plastronics Socket

17   purportedly assigned its half of the '602 Patent rights to Plastronics H-Pin.  Dkt. 11 ¶ 79.

18   Thus, at all times since issuance, Mr. Hwang has retained half the rights to the '602 Patent.

19   But Mr. Hwang is not a plaintiff to this patent-infringement suit, and Plastronics cannot

20   compel him to be. Without Mr. Hwang as a co-plaintiff, Plastronics lacks standing to sue

21   HighRel and HiCon USA for patent infringement and Plastronics' patent-infringement

22   claims against them must be dismissed.

23   ## II.   APPLICABLE LAW

24        "[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join

25   as plaintiffs in an infringement suit." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468

26   (Fed. Cir. 1998).  And a co-owner may not be involuntarily joined as a plaintiff to an

27   infringement suit.  *E.g.*, *STC.UNM*, 754 F.3d at 946.  There are three recognized exceptions

28   to this well-settled rule. *First*, if a patentee has granted an exclusive license, he must permit

his licensee to sue in his name. *Ethicon*, 135 F.3d at 1468 n.9 (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469 (1926)). *Second*, an exclusive licensee may also sue the patentee as the accused infringer. *Littlefield v. Perry*, 88 U.S. 205, 223 (1874); *see also Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (exclusive licensee can sue "where the patentee is the infringer, and [he] cannot sue himself"). *Third*, a co-owner may contractually waive his right to refuse to join an infringement suit. *Ethicon*, 135 F.3d at 1468 n.9 (citing *Willingham v. Lawton*, 555 F.2d 1340, 1344-45 (6th Cir. 1977)). None of these exceptions applies in this case.

## III.   ARGUMENT

### A.   None of the exceptions to the rule requiring all patentees join a suit as plaintiffs applies here.

As explained in their Complaint, neither Plastronics Socket nor Plastronics H-Pin owns or has ever owned all rights in the '602 Patent. Dkt. 11 ¶¶ 9, 41. Rather, Mr. Hwang has always retained an equal share of all rights in the '602 Patent. Dkt. 11 ¶ 41. Accordingly, Plastronics cannot sue either HighRel or HiCon USA for infringement unless either Mr. Hwang joins as a plaintiff or one of the exceptions to the general rule applies. Neither applies here.

#### 1.   *Plastronics is not an exclusive licensee.*

The first exception to the joinder rule allows an exclusive licensee to sue in the patent owner's name. But Plastronics is an assignee of half the rights in the '602 Patent, not an exclusive licensee. Dkt. 11 ¶¶ 9, 41. Because Plastronics is not an exclusive licensee, this exception does not apply here.

#### 2.   *Plastronics does not accuse Mr. Hwang of infringement.*

The second exception to the joinder rule allows an exclusive licensee to sue the patentee as the accused infringer. *Littlefield v. Perry*, 88 U.S. 205, 223 (1874); *see also Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1484, 1484 (Fed. Cir. 1998) (allowing an exclusive licensee to sue "where the patentee is the infringer, and cannot sue himself"). But as discussed above, Plastronics is not an exclusive licensee. Also, Plastronics does not accuse the patentee, Mr.

1   Hwang, of infringing here. Rather, Plastronics accuses HighRel and HiCon USA—separate

2   entities unrelated to Mr. Hwang.

3          "The patentee is joined for the purpose of avoiding the potential for multiple

4   litigations and multiple liabilities and recoveries against the same alleged infringer." *Morrow v.*

5   *Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).  But Plastronics' unilateral patent-

6   infringement claims risk exposing Defendants to just that threat. Although Mr. Hwang has a

7   business relationship with Defendants now, that could change at any time. And a business

8   relationship is not necessarily a defense to a patent-infringement claim. Defendants should

9   not face the risk of multiple infringement suits on the same patent.

10         Plastronics is not an exclusive licensee. Plastronics is not suing the patentee as the

11  alleged infringer. And the main policy rationale for the joinder rule—protecting alleged

12  infringers from the risk of multiple lawsuits—counsels against allowing Plastronics to sue

13  HiCon USA and HighRel. Accordingly, this exception to the joinder rule does not apply.

14              3.      *Mr. Hwang did not contractually waive his right to refuse to join an infringement*

15                      *suit.*

16         Plastronics describes two agreements in its Complaint, the Royalty Agreement and

17  the Assignment and Agreement.  Dkt. 11 ¶¶ 9.  Neither agreement requires Mr. Hwang to

18  join a patent-infringement suit or allows Plastronics to file suit without Mr. Hwang.

19         The six numbered paragraphs of the Royalty Agreement are silent on this issue.  *See*

20  *generally* Ex. B (Royalty Agmt.).  The Assignment and Agreement, also only six paragraphs

21  long, is likewise silent on allowing Plastronics to file suit unilaterally.  *See generally* Ex. A

22  (Assignment and Agmt.).  The Assignment and Agreement does include one provision

23  requiring Mr. Hwang to assist in certain situations, but it does not require him to join

24  infringement lawsuits. Specifically, the fifth paragraph requires Mr. Hwang's assistance in

25  prosecution matters:

26         I hereby further agree that I will communicate to said Assignees, or to their
           successors, assigns and legal representatives, any facts known to me respecting
27         any improvements, and, at the expense of said Assignees, to testify in any legal
           proceedings, sign all lawful papers, execute all divisional, continuation,
28         continuation-in-part, reissue and substitute applications, make all lawful oaths,
           and generally do everything possible to vest title in said Assignees and to aid

4

said Assignees, their successors, assigns and legal representatives to obtain and enforce proper protection for said invention in all countries.  Ex. A (Assignment & Agmt.) ¶ 5.

The Assignment and Agreement, including this provision, does not compel Mr. Hwang to join this suit as a plaintiff for several reasons.

*First*, Mr. Hwang is already a party to this suit as a defendant. It is "a long-recognized general principle that no person may sue himself." *E.g.*, *United States v. Interstate Commerce Comm'n*, 337 U.S. 426, 430 (1949).  As a defendant, Mr. Hwang cannot be joined as a plaintiff here. Even if a contractual provision compels Mr. Hwang to join, Plastronics would have to join Mr. Hwang involuntarily under Federal Rule of Civil Procedure 19. *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014) ("[I]f, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers.") (quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 n.9 (Fed. Cir. 1998)). But Plastronics has not and cannot attempt to join Mr. Hwang as a plaintiff because he is already a defendant. Thus, whether Mr. Hwang is contractually obligated to join as a plaintiff is irrelevant—he cannot.

*Second*, the Assignment and Agreement's paragraph 5 does not compel Mr. Hwang to join a patent-infringement lawsuit. It merely requires him to "aid [Plastronics] to obtain and enforce proper protection for said invention in all countries."  Ex. A (Assignment & Agmt.) ¶ 5.  Incurring the time, expense, and effort of participating as a joint plaintiff in an infringement lawsuit goes well beyond giving "aid" to obtaining and enforcing patent protection. Further, the catch-all phrase "do everything possible to . . . enforce proper protection for said invention" is so vague and overbroad that it is unenforceable. *See Parker v. Dodge*, 98 S.W.3d 297, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (court may consider if there is such gross disparity in the contractual exchange as to show unconscionability, bad faith, or fraud).

If the parties had meant to require participation in lawsuits, the contract would state so explicitly. The Assignment and Agreement enumerates several specific requirements of Mr. Hwang, including testifying in legal proceedings, signing papers, executing applications,

and making oaths.  Ex. A (Assignment & Agmt.) ¶ 5.  Joining and participating in infringement suits is conspicuously absent. And as the canon of contract interpretation *expressio unius est exclusio alterius* dictates, a list of explicit requirements excludes those not listed.  *Am. Life, Inc. v. Myer*, 440 S.W.3d 18, 24-25 (Tex. 2014).  The Agreement lists several duties, but joining infringement suits is not among them, indicating the parties did not consider that an obligation under the contract. The Agreement should not be amended now to create that additional burden for Mr. Hwang.

       *Third*, even if some provision of the Assignment and Agreement is read to compel Mr. Hwang to join a Plastronics infringement suit, the Assignment and Agreement is unenforceable due to lack of consideration.

       "In the absence of an explicit choice of law by the parties, the contractual rights and duties of the parties are determined by the local law of the state having the most significant relationship to the parties and the transaction."  *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122 (1971)).  The Assignment and Agreement was formed in Texas, by parties residing in Texas, and was generally intended to be carried out in Texas.  *See generally* Ex. A (Assignment & Agmt.).  Accordingly, Texas law applies to the interpretation and enforceability of the agreement.

       In Texas, a contract that lacks consideration is unenforceable.  *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997), *superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 595 (Tex. 2001).  Further, "under the 'pre-existing duty rule,' an agreement to do what one is already bound to do cannot serve as 'sufficient consideration to support a supplemental contract or modification.'"  *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 93 (5th Cir. 1995) (quoting *Signs v. Bankers Life & Casualty Co.*, 340 S.W.2d 67, 73 (Tex.Civ.App.—Dallas, 1960, no writ)).  Plastronics and Mr. Hwang made certain mutual promises in the September 2005 Royalty Agreement.  *See generally* Ex. B (Royalty Agmt.). The October 2005 Assignment and Agreement is a new and distinct contract. The Assignment and Agreement repeats some, but

not all, of the Royalty Agreement provisions. *See generally* Ex. A (Assignment & Agmt.). But the Assignment and Agreement also creates new obligations on Mr. Hwang while creating no new obligations for Plastronics. Specifically, the agreements create at least the following obligations on each party:

**Plastronics' Obligations**

| Royalty Agreement[2] | Assignment and Agreement[3] |
|---|---|
| PSP will pay Mr. Hwang a 3% royalty on gross sales after all non-reoccurring capital costs for the life of the patent. Payment is to be made twice annually with calculated results with back data. (¶ 3) | PSP must provide Mr. Hwang with an accounting for any revenue and profits made from the invention for the term of any patents. (¶ 6) |
| PSP will not license the patents covering the "H-Pin Project" without approval from Mr. Hwang. (¶ 5) | PSP agrees not to transfer any interest in or license the invention without the written consent of Mr. Hwang. (¶ 6) |
| PSP will evenly split any patent royalties paid by a third party. (¶ 4) | |

**Mr. Hwang's Obligations**

| Royalty Agreement | Assignment and Agreement |
|---|---|
| Mr. Hwang will not grant a license for the patents covering the "H-Pin Project" without approval from PSP. (¶ 5) | Mr. Hwang agrees not to transfer any interest in or license the invention without PSP's written consent. (¶ 6)[4] |
| Mr. Hwang will evenly split any patent royalties paid by a third party. (¶ 4) | |
| If Mr. Hwang works for another entity, he will pay PSP a 1.5% royalty of gross sales of patented products from this entity. Payment is to be made twice annually with calculated results with back data. (¶ 4) | Mr. Hwang must provide PSP with an accounting for any revenue and profits made from the invention for the term of any patents. (¶ 6) |
| | Mr. Hwang will execute documents necessary to perfect PSP's rights in any patents. (¶ 4) |
| | Mr. Hwang agrees to communicate to PSP any facts respecting any improvements. (¶ 5) |

---

[2] Ex. B (Royalty Agmt.).
[3] Ex. A (Assignment & Agmt.).
[4] The slight wording differences between the two agreements obviously contemplates the same restriction on extending patent rights to any third parties. These minor differences are not a significant change in the parties' substantive rights as to be valid consideration.

| | Mr. Hwang agrees to testify in legal proceedings, sign documents, and to assist in vesting title in PSP and aid in obtaining and enforcing protection for the invention. (¶ 5) |
|---|---|

As the tables above show, the Assignment and Agreement creates no new obligations for Plastronics, but merely repeats certain promises already made in the Royalty Agreement. The Assignment and Agreement, however, burdens Mr. Hwang with several new obligations, including communicating improvements to Plastronics and assisting in enforcing protection for the invention. *See generally* Ex. A (Assignment & Agmt.) ¶ 5. Plastronics' existing obligations under the Royalty Agreement provide no new consideration for Mr. Hwang's new promises in the Assignment and Agreement. The Assignment and Agreement also recites consideration in paragraph 3, but this is also insufficient. Rather, this merely indicates that the Royalty Agreement was sufficient consideration for Mr. Hwang's assignment of patent rights in the first part of the Assignment and Agreement. Also, "the recital of consideration in a written instrument is not conclusive." *Burges v. Mosley*, 304 S.W.3d 623, 629 (Tex. App.—Tyler 2010, no pet.) Lacking consideration from Plastronics, the Assignment and Agreement is unenforceable. Thus, even if the Assignment and Agreement is interpreted to require Mr. Hwang to join a Plastronics infringement suit, any such requirement is void because the agreement is unenforceable.

Nothing in either the Royalty Agreement or Assignment and Agreement allows Plastronics to file an infringement suit without Mr. Hwang or waives Mr. Hwang's right to refuse to join such a suit. Nothing in either agreement requires Mr. Hwang's joinder. And even if the Assignment and Agreement were read to require such joinder, such a provision is unenforceable due to lack of consideration and because it would require the absurd and impossible result of Mr. Hwang being both a plaintiff and defendant in this suit. Accordingly, the contractual-waiver exception does not apply to cure Plastronics' standing defect.

8

**B.**     **Mr. Hwang's involvement as a defendant does not give Plastronics standing.**

As discussed above, standing requires all co-owners to voluntarily join *as plaintiffs*; thus, Mr. Hwang's presence as a defendant does not cure Plastronics' lack of standing.[5] The Federal Circuit has recognized an exception to the requirement that all co-owners must be joined as plaintiffs; but that exception also does not apply here. In *Evident Corp. v. Church & Dwight Co.*, the court found that a licensee had standing to sue where the patentee was joined as a third-party defendant. *Evident*, 399 F.3d 1310, 1314 (Fed. Cir. 2005). There, the licensee sued an alleged infringer, who then counterclaimed against both the licensee and the patentee. *Id.* Thus, though a third-party defendant, the patentee's interests in the case were substantially aligned with the plaintiff's—its licensee—and against the defendant's—the alleged infringer. Here, Mr. Hwang and the alleged infringers, HighRel and HiCon USA, all face Plastronics as defendants. Mr. Hwang's interests are aligned with HighRel's and HiCon USA's and against Plastronics'. So Mr. Hwang's presence in the case as a defendant does not give Plastronics standing.

Further, some courts have discounted prudential standing concerns when "necessary to prevent an absolute failure of justice." *E.g.*, *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891). This case poses no such risk. Specifically, Plastronics accuses Mr. Hwang of licensing the '602 Patent to HighRel and HiCon USA. Dkt. 11 ¶ 10. If true—and the Court must consider pleaded facts as true for purposes of this motion—HighRel and HiCon USA are licensed, and therefore cannot infringe. *Warth*, 422 U.S. at 501 (citing *Jenkins v. McKeithen*,

---

[5] *STC.UNM*, 754 F.3d at 941 (quoting *Ethicon*); *Taylor v. Taylor Made Plastics, Inc.*, 565 F. App'x 888, 889 (Fed. Cir. 2014) ("The long-established rule is that a suit for patent infringement must join all co-owners of the patent as *plaintiffs*."); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 848 (Fed. Cir. 2009) (quoting *International Nutrition*); *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001) ("United States patent law . . . requires that all co-owners normally must join as *plaintiffs* in an infringement suit."); *Ethicon*, 135 F.3d at 1468 ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as *plaintiffs* in an infringement suit."); *Willingham v. Star Cutter Co.*, 555 F.2d 1340, 1343 (6th Cir. 1977) ("We recognize the general rule that all co-owners of a patent must be joined as *plaintiffs* before an infringement suit can be initiated.") (all emphases added and citations omitted).

9

395 U.S. 411, 421-22 (1969); 35 U.S.C. § 271(a) ("[W]hoever *without authority* makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.") (emphasis added). If Mr. Hwang breached a contract by granting HighRel or HiCon USA a license—as Plastronics alleges—Plastronics' remedy properly lies in its breach-of-contract claims, which Plastronics has already brought against Mr. Hwang in a pending action in the Eastern District of Texas. Dkt. 11 ¶ 10.; Ex. C (*Plastronics Socket Partners, Ltd. v. Hwang*, No. 2:18-cv-14-JRG, Dkt. 65 (E.D. Tex. July 9, 2018)) at 25-32. Thus, denying standing for Plastronics' patent-infringement claims against HighRel and HiCon USA will not thwart any justice to which Plastronics might be entitled.

C.   **The Court should also dismiss Plastronics' tortious-interference claims against HighRel and HiCon USA.**

Plastronics' tortious-interference claims against HighRel and HiCon USA are predicated on patent infringement as the underlying improper conduct.  Dkt. 11 ¶ 231. Because Plastronics' lacks standing for its patent-infringement claim, that claim necessarily fails. And without a claim for the underlying improper conduct, Plastronics cannot support its tortious-interference claims against these defendants. Accordingly, because Plastronics' patent-infringement claims should be dismissed, Plastronics' tortious-interference claims should similarly be dismissed as to HighRel and HiCon USA.

## IV.   CONCLUSION

Plastronics is not and has never been the sole owner of the '602 Patent. Thus, under well-settled law, Plastronics does not have standing to sue for infringement of the '602 Patent without Mr. Hwang, the patent's co-owner, voluntarily joining the suit as a plaintiff. Mr. Hwang will not—and cannot—do so here. Further, none of the exceptions to the joinder requirement apply: (1) Plastronics is not an exclusive licensee; (2) Plastronics is not suing the patentee as the infringer; and (3) Mr. Hwang has not contractually waived his right to refuse to join. Accordingly, Plastronics lacks standing to sue HighRel and HiCon USA for infringement of the '602 Patent and the Court should dismiss those claims from this case.

1  Without a claim for the underlying improper conduct of patent infringement, the Court

2  should also dismiss Plastronics' tortious-interference claims against HighRel and HiCon

3  USA.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAYNES AND BOONE, LLP

 /s/ *Stephanie N. Sivinski*
John Russell Emerson (*pro hac vice*)
Stephanie N. Sivinski (*pro hac vice*)
Jamie Raju (*pro hac vice*)

Attorneys for Defendants HighRel, Inc.; HiCon USA, LLC; Dong Weon Hwang; and Paul Schubring


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2018, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

 /s/ *Stephanie N. Sivinski*