**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Plastronics Socket Partners Limited, et al., | No. CV-18-03201-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Highrel Incorporated, et al., | |
| Defendants. | |

Pending before this court are two motions: Defendant Paul Shubring's Motion to Dismiss Plaintiffs' First Amended Complaint and Request For Injunction (Doc. 20) and Defendant Dong Weon Hwang's Motion to Dismiss Plaintiffs' First Amended Complaint and Request For Injunction (Doc. 41). The motions are fully briefed and there is no request for oral argument.

**I.    Factual Background**

Plastronics Socket is a provider of technology and innovation for the semiconductor industry, including burn-in sockets and related components. (Doc. 11 ¶ 2, "FAC"). Defendants Hwang and Schubring are both former Plastronics employees. (FAC ¶¶ 3–4). Defendant Hwang worked for Plastronics as the Chief Technology Officer from October 2004 until April 2008. (FAC ¶¶ 36, 46). Defendant Schubring worked for Plastronics from October 2007 until April 2009 (FAC ¶¶ 50, 54). Defendant Schubring managed the supply chain for burn-in sockets and related components. (FAC ¶ 50).

Plaintiffs allege that Hwang "received, agreed, and signed a letter agreement from

Plastronics regarding the Proprietary Information of Plastronics (the 'Confidential Information Acknowledgment Agreement')" upon leaving the company and that the agreement informed Hwang of his obligations to maintain the secrecy of the proprietary information. (FAC ¶ 47). Plaintiffs further allege that Schubring signed a proprietary information agreement as a condition of his employment and that it required Schubring to keep proprietary material confidential. (FAC ¶¶ 51–52).

Defendant Hwang formed HiCon Ltd. on or about April 30, 2008, to manufacture and sell competing products. (FAC ¶ 57). On or about July 27, 2009, Hwang formed HiCon Co. to design and sell competing products. (FAC ¶ 60). In 2016, Hwang and Schubring formed HiCon USA, which signed an exclusive distribution agreement with HiCon Ltd. and/or HiCon Co. for the territory of North America. (FAC ¶ 65).

On October 10, 2018, Plaintiffs filed their First Amended Complaint (FAC) alleging the following counts: (1) patent infringement against HiCon USA, (2) patent infringement against HighRel, (3–4) misappropriation of trade secrets in violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. 1836(c), and the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-401 *et seq.*, against Hwang, (5–6) misappropriation of trade secrets in violation of DTSA and AUTSA against Schubring, (7) breach of contract against Hwang, (8) breach of fiduciary duty against Hwang, (9) breach of contract against Schubring, and (10) tortious interference with business expectancy, prospective business relations against all Defendants.

## II. Legal Standard for a Motion to Dismiss under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### III. Analysis

Defendant Hwang's Motion to Dismiss (Doc. 41) and Defendant Schubring's Motion to Dismiss (Doc. 20) are both brought under Rule 12(b)(6) and argue similar bases for dismissal so they will be discussed together.

**A. Trade Secret Violation under 18 U. S. C. § 1836 or A.R.S. § 44-401 *et seq.***

Defendants' Hwang and Schubring argue that Plaintiffs have failed to identify what specific information was misappropriated and have only identified vague and broad categories of information. Hwang and Schubring also argue that Plastronics fails to explain how or why the information would have independent economic benefit when not generally known by the public.

Under the Arizona Uniform Trade Secret Act, a plaintiff must prove two elements: (1) the existence of a trade secret and (2) actual or threatened misappropriation. *See Calisi v. Unified Fin. Servs., LLC*, 302 P.3d 628, 631–32 (Ariz. Ct. App. 2012); *Miller v. Hehlen*, 104 P.3d 193, 201 (Ariz. Ct. App. 2005). In the absence of a conflict, the Court can rely on common law principles to interpret the statute. *Calisi*, 302 P.3d at 631. The subject matter of the information must be a secret and reasonable efforts must have been taken to keep the information secret. *Id.* "[T]he most important factor in gaining trade-secret protection is demonstrating that the owner has taken such precautions as are reasonable under the circumstances to preserve the secrecy of the information." *Enter. Leasing Co. v. Ehmke*, 3 P.3d 1064, 1070 (Ariz. Ct. App. 1999).

The term "trade secret" is a defined term under both Arizona and U.S. statutes. A.R.S. § 44-401(4); 18 U.S.C. § 1839(3). The definitions are broad and fairly similar. The federal statute, 18 U.S.C. § 1839(3), reads as follows:

> (3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through

> proper means by, another person who can obtain economic value from the disclosure or use of the information.

The Arizona statute, A.R.S. § 44-401(4), reads as follows:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process, that both:
>
>> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>>
>> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The first question is whether Plaintiffs pled sufficient facts to support the allegation that information misappropriated qualifies as a trade secret. The first argument from the Defendants is that there is no specificity about the trade secrets. As to Defendant Schubring, Plaintiffs define the trade secrets as "those that Schub[r]ing was aware of and are described above in paragraphs 50-51." (FAC ¶¶ 157, 170). Paragraph 51 refers to a proprietary information agreement signed by Schubring. That agreement lists fifty-three categories of information. There are no factual allegations defining what information in any category was misappropriated. As to Defendant Hwang, Plaintiffs define trade secrets as "those that Hwang was aware of" and "information, including formulae, patterns, compilations, programs, devices, methods, techniques or processes described above in paragraphs 37-38, 47-48." (FAC ¶¶ 131, 144). Paragraph 38 again refers to a proprietary information agreement that lists many broad categories of information. Paragraphs 47 and 48 refer to the Confidential Information Acknowledgement Agreement signed by Hwang and allege that Hwang agreed to an obligation to maintain the secrecy of proprietary information in the confidential information agreement. There are no factual allegations defining what information in any category was misappropriated.

Plaintiffs argue that what they said in the FAC is sufficient to put Defendants on

- 5 -

notice as to what has been misappropriated but fail to explain how. Plaintiffs cite to *Cedars Sinai Medical Center v. Quest Diagnostic Inc*., No. CV 17-5169-GW(FFMX), 2018 WL 2558388 (C.D. Cal. Feb. 27, 2018), in support. The court in that case held that the level of detail required in trade secret pleadings is not high. *Id.* at *5. However, the complaint in *Cedar Sinai* not only described the general areas of trade secret information, but also identified specific documents that contained the trade secrets which limited the scope of the alleged violations. *Id.* at *1. Plaintiffs also rely on the ruling in *Rockwell Collins, Inc. v. Wallace*, SACV 17–01369 AG (JCGx), 2017 WL 5502775 (C.D. Cal. Nov. 10, 2017). In that case, Rockwell alleged the defendant misappropriated "protected information concerning 'flight control systems, methods, assemblies, and services.'" *Id.* at *2. Rockwell also cited to specific documents downloaded by the defendant. *Id.* at *1. This information narrowed the scope of the allegations. In this case, Plaintiffs have only alleged vague and broad categories of information. There are no supplemental paragraphs defining the type of information or category of information allegedly misappropriated. Plaintiffs have failed to allege what trade secret information was misappropriated with enough specificity to put Defendants on notice of the claim.

Secondly, Defendants argue that Plaintiffs have failed to explain why the trade secrets have independent economic benefit. The allegations as to the value of the trade secrets say either "Plastronics' Trade Secrets comprise financial, business, scientific, technical, economic, engineering, and other confidential business information that derives independent value from not being known to or readily accessible by the public using proper means," (FAC ¶¶ 132, 158), or "Plastronics' Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use," (FAC ¶¶ 145, 171). Plaintiffs do not address this in their response. The Court finds that the allegations described above are nothing more than a recital of the elements of the cause of action. There are no facts to explain how it derives independent economic value from not being generally known.

Thirdly, Defendants argue that Plaintiffs did not plead sufficient facts to show that it took reasonable measures to protect the trade secrets. When reading the FAC as a whole, the Court finds Plaintiffs have satisfied the Rule 8 pleadings standards in regard to Plaintiffs' efforts to protect trade secrets. It's alleged in many places that employees were required to sign agreements to safeguard trade secret information. (*See, e.g.*, FAC ¶¶ 7, 48, 134, 137, 163).

In summary, Plaintiffs' allegations are not sufficient to explain why the information constitutes trade secrets or how exactly it derives its independent economic value from not being generally known. Accordingly, counts 3, 4, 5 and 6 will be dismissed.

### B. Breach of Contract

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of the contract, (2) its breach, and (3) resulting damages. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Here, Defendants do not dispute the existence of a contract or that damages were properly pled but rather argue that the allegations supporting the breach are insufficient. The breach alleged is for misappropriation of trade secrets in violation of the Hwang Confidential Information Acknowledgement Agreement and the Schubring Proprietary Information Agreement. This allegation is insufficient because, as described above, the misappropriation of trade secrets was not sufficiently pled. Therefore, counts 7 and 8 will be dismissed.

### C. Tortious Interference

Defendants do not argue the elements for a claim of tortious interference but rather argue that AUTSA preempts common-law claims for improper use of trade secrets, including tortious interference. Plaintiffs respond by pointing out that AUTSA only preempts common-law claims based on improper use of trade secrets but does not apply to claims based on improper use of confidential information that is not a trade secret. Section § 44-407(A) and (B) of the AUTSA read as follows:

> A. Except as provided in subsection B, this chapter displaces conflicting tort, restitutionary and other laws of this state providing civil remedies for misappropriation of a trade secret.

> B. This chapter does not affect:
> 1. Contractual remedies, whether or not based on misappropriation of a trade secret.
> 2. Other civil remedies that are not based on misappropriation of a trade secret.
> 3. Criminal remedies, whether or not based on misappropriation of a trade secret.

A.R.S. § 44-407(A)-(B). The FAC alleges that "Defendants intentionally interfered with the business expectancy or relationship at least between Plastronics Socket and NXP. Defendants, had knowledge of the continuing expectancy or relationship between Plastronics Socket and NXP and interfered by using Plastronics' Trade Secrets, including without limitation Plastronics' customer contacts, customer lists, customer requirements and needs, data used by Plastronics to formulate customer bids to sell to NXP competing products, including test sockets which include at least one of the Accused Devices." (FAC ¶ 230). The FAC does not allege any interference by using confidential information that was not a trade secret. Therefore, this claim is preempted by the AUTSA. Count 10 will be dismissed.

### D. Breach of Fiduciary Duty

Defendant Hwang argues that this count must be dismissed because it relies solely on the misappropriation of trade secrets and that claim has not been sufficiently pled. Defendant Hwang also argues that this count is also preempted by AUTSA. The FAC, however, reveals that the allegations relating to breach of fiduciary duty relate to both confidential and trade secret information. (FAC ¶¶ 201–204). Therefore, to the extent the claim relies on trade secret information, the motion will be granted. The motion will be denied as to claims arising from confidential information that is not trade secret.

## IV. Conclusion

**IT IS ORDERED** that Defendant Paul Shubring's Motion to Dismiss Plaintiffs' First Amended Complaint and Request For Injunction (Doc. 20) and Defendant Dong Weon Hwang's Motion to Dismiss Plaintiffs' First Amended Complaint and Request For Injunction (Doc. 41) are **GRANTED in part**. Counts 3, 4, 5, 6, 7, 8, and 10 are dismissed

without prejudice. Count 9 will remain as it relates to a breach of fiduciary duty based on confidential, non-trade secret information. All claims relying on trade secret information are preempted by AUTSA.

**IT IS FURTHERED ORDERED granting** Plaintiffs leave to file a second amended complaint. Because there is another pending motion to dismiss (Doc. 31), the deadline for filing the second amended complaint will be 30 days after the Court rules on the remaining motion.

Dated this 9th day of May, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge