1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9   Plastronics Socket Partners Limited and       No. CV-18-03201-PHX-SMB
    Plastronics H-Pin Limited,
10                                                 **ORDER**
                    Plaintiffs,
11
    v.
12
    Highrel Incorporated, Hicon USA LLC,
13  Dong Weon Hwang, and Paul Schubring,

14                  Defendants.

15

16         Pending before this Court is a Motion to Dismiss Claims for Lack of Subject-Matter

17  Jurisdiction filed by Defendants HighRel, Inc. ("HighRel") and HiCon USA, LLC ("HiCon

18  USA") (collectively "Defendants").[1]  (Doc. 31, Mot.).  Plaintiffs Plastronics Socket

19  Partners Limited and Plastronics H-Pin Limited[2] ("Plaintiffs" or "Plastronics") filed an

20  opposition, (Doc. 43, Resp.), and Defendants filed a reply, (Doc. 52, Reply).

21  **I.    Factual Background**

22         Plastronics Socket is a provider of technology and innovation for the semiconductor

23  industry, including burn-in sockets and related components.  (Doc. 11 ¶ 2, "FAC").  In

24  2003, Defendant Dong Weon Hwang was an engineer based in Korea.  (FAC ¶ 36).  In

25  _____

26  [1] This motion is filed only by Defendants HighRel, Inc. and HiCon USA LLC, and not
    Defendants Hwang or Shubring.  For the sake of this motion, the Court will use
27  "Defendants" to refer to the filing parties.
    [2] In December 2012, Plastronics Socket formed Plastronics HPin through a divisive
28  merger.  (Doc. 11 ¶ 79).

2004, he joined Plastronics Socket as its Chief Technology Officer (FAC ¶ 36). Before joining Plastronics, Hwang had an idea for a new contact pin (the "Invention"), which became the subject of U.S. Patent No. 7,025,602 (the "'602 Patent"). (FAC ¶¶ 9, 39). The '602 Patent was issued April 11, 2006 and entitled "Contact for Electronic Devices." (FAC ¶ 9). On September 24, 2005, prior to obtaining the patent, Hwang and Plastronics executed a royalty agreement (the "Royalty Agreement"), under which Plastronics agreed to pay for the development of the Invention and worldwide patent rights where needed, and Plastronics was to be assigned the patent jointly with Hwang. (FAC ¶ 40). The Royalty Agreement also prohibited both Plastronics Socket and Hwang from granting a license for the Invention without approval from the other party. (FAC ¶ 40).

On October 4, 2005, also prior to obtaining the patent, Hwang and Plastronics Socket executed an assignment agreement, assigning half of the right, title, and interest in and to the Invention and any letters patent that may issue thereon (the "Assignment and Agreement"). (FAC ¶ 41). The other half was assigned to Hwang. (FAC ¶ 41). Additionally, both Hwang and Plastronics Socket agreed to not transfer any interest in or license the Invention without the written consent of all Assignees. (FAC ¶ 42).

In April 2008, Hwang decided to return to Korea and resigned his position with Plastronics. (FAC ¶ 56). Also in April 2008, Hwang formed HiCon Ltd. to manufacture and sell competing products. (FAC ¶ 57). On or about July 27, 2009, Hwang formed HiCon Co. to design and sell competing products. (FAC ¶ 60). In 2016, Hwang and Defendant Paul Schubring formed HiCon USA,[3] which signed an exclusive distribution agreement with HiCon Ltd. and/or HiCon Co. for the territory of North America. (FAC ¶ 65).

On October 10, 2018, Plaintiffs filed their First Amended Complaint (FAC) alleging counts of patent infringement against Defendants HiCon USA and HighRel, as well as a count of tortious interference with business expectancy, prospective business relations.

---

[3] HiCon USA is an Arizona limited liability company and a wholly owned subsidiary of HighRel. (FAC ¶ 15–16).

Plaintiffs also alleged various counts against Defendants Hwang and Shubring, all but one of which was dismissed by this Court's May 9, 2019 order, (Doc. 58). Defendants now move to dismiss, asserting that Plaintiffs lack standing because this patent infringement suit was not brought by both owners of the patent. (Mot. at 2).

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. "A defect in standing is a defect in subject matter jurisdiction, for 'standing in its most basic aspect can be one of the controlling elements in the definition of a case or controversy under Article III.'" *Knowles Elecs. LLC v. Iancu*, 886 F.3d 1369, 1380 (Fed. Cir. 2018) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989)). "The doctrine of standing limits federal judicial power and has both constitutional and prudential components." *Media Techs. Licensing, LLC. v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003). Constitutional standing requires that a plaintiff suffer an injury-in-fact, that there be a causal connection between the plaintiff's injury and a defendant's conduct, and that the plaintiff's injury be capable of redress by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "In addition to the three-prong Article III standing test delineated in *Lujan*, standing doctrine embraces judicially self-imposed limits, known as prudential limits, on the exercise of jurisdiction." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001).

"Standing to sue for infringement stems from the Patent Act, which provides: '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264 (Fed. Cir. 2007) (quoting 35 U.S.C. § 281). "Where one co-owner possesses an undivided part of the entire patent, that joint owner must join all the other co-owners to establish standing." *Id.* "[O]ne co-owner has the right to limit the other co-owner's ability to sue infringers by refusing to join voluntarily in the patent infringement suit." *Id.* (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) (holding that "as a matter of substantive patent law, all co-

owners must ordinarily consent to join as plaintiffs in an infringement suit")).

Courts have, however, recognized at least two exceptions to the rule that all co-owners must consent to join as plaintiffs in an infringement suit. "'First, when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee' and can be involuntarily joined as a plaintiff in the licensee's infringement suit." *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014) (quoting *Ethicon*, 135 F.3d at 1468 n.9). Second, "[i]f, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers." *Id.* (quoting *Ethicon*, 135 F.3d at 1468 n.9). Courts have also recognized a possible third situation in holding that "an exclusive licensee that does not have all substantial rights does have standing to sue in his own name when 'necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself.'" *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (quoting *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891)).

### III.    Analysis

Both parties agree that Plastronics and Hwang retain equal shares of all the rights in the '602 patent. (Mot. at 2) (Resp. at 3). Therefore, the inquiry here is not one involving an exclusive licensee, but rather two co-owners. Neither party argues that Plastronics does not have constitutional standing to sue. *See Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1314 (Fed. Cir. 2005) (holding that plaintiff with significant rights to the patent "[c]learly . . . had constitutional standing to sue under the patent"). The question is one of whether Plastronics has prudential standing to bring a patent infringement action without Hwang joined as a plaintiff. As noted above, it is well-settled law that "[w]here one co-owner possesses an undivided part of the entire patent, that joint owner must join all the other co-owners to establish standing." *Israel Bio-Eng'g Project*, 475 F.3d at 1264. Defendants argue that Plaintiffs do not have standing for two reasons. First, Defendants argue that Hwang's involvement as a defendant does not confer standing. Second, Defendants argue that none of the recognized exceptions to the rule that all co-owners must

be joined as plaintiffs apply to this action.

### A. *Hwang's Status as a Defendant Does Not Confer Standing*

Defendants argue that Hwang's status as a defendant in the action does not confer standing on Plastronics. (Mot. at 9). Defendants assert that the factual situation in *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310 (Fed. Cir. 2005), is inapplicable here. In *Evident*, a licensee of a patent brought a suit against an alleged infringer. *Id.* at 1312. The alleged infringer filed a counterclaim seeking a declaratory judgment that the patent was not infringed, invalid, and unenforceable. *Id.* The alleged infringer joined the patent owner as a third-party defendant in its counterclaim. *Id.* The court held that the patent was unenforceable, which the Federal Circuit affirmed. *Id.* During the pendency of appeal, the lower court awarded $1.3 million in attorney's fees to the alleged infringer. *Id.* at 1312–13. The patent owner and the licensee then appealed the award of attorney's fees, and for the first time, the patent owner challenged whether the licensee had standing to bring the original action without having joined the owner. *Id.* at 1313. The court stated its rule that "a patentee should be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee," but noted that

> the policy concerns motivating the need for a patent owner to be joined in an infringement suit with its licensee—principally, from the standpoint of an accused infringer, avoidance of multiple lawsuits and liabilities, and, from the standpoint of the patentee, ensuring that its patent is not invalidated or held unenforceable without its participation—are surely met here by [the patent owner] having been joined as a third-party defendant.

*Id.* at 1314. The Federal Circuit held that the patent owner's "presence in the litigation as a third-party defendant satisfied any standing requirements." *Id.*

*Evident* presents another possible exception to the rule that a patent owner must be joined as a plaintiff in a lawsuit against an alleged infringer. But Defendants argue that the court's reasoning in *Evident* does not apply here because in *Evident*, the third-party defendant's interests were aligned with the Plaintiff's (the licensee's) interests, and here, Hwang, as a co-defendant and not a third-party defendant, is sided against the patent's

co-owner. (Mot. at 9). Plaintiffs respond asserting that nowhere in the *Evident* opinion did the court rely on "any alleged alignment of interests with plaintiff for its decision." (Resp. at 7).

The facts underlying the *Evident* holding are dissimilar to the facts here. As an initial matter, *Evident* dealt with a patent owner and a licensee—not two co-owners. Furthermore, in *Evident*, the patent owner and the licensee were both defendants to the counterclaim and both defending the patent. That is not the case here. Hwang is not defending the patent with Plastronics and is only in the lawsuit because of one remaining count for breach of fiduciary duty in regard to confidential information—a count separate from the infringement counts. The facts here do not parallel the facts in *Evident*.

Also, the *Evident* court discussed that both the patent owner and the licensee "were clearly parties to the lawsuit, and [the patent owner] participated throughout the duration of the lawsuit." 399 F.3d at 1314. The question of standing was first raised on a *second* appeal to the Federal Circuit and after seven years of litigation. *Id.* The court did not need to question whether the patent owner was going to be involved in the entirety of the litigation—it had already happened. Again, that is not the case here. At present, Hwang is only tied as a defendant to this lawsuit by one count which is unrelated to the infringement claims. (Doc. 58) (dismissing all counts against Hwang except breach of fiduciary duty in regard to confidential information). Hwang can be dismissed as a defendant from the lawsuit at any point, leaving Plastronics as only one of two co-owners to bring the remainder of the suit against the alleged infringers. Unlike in *Evident*, this Court is not able to overlook the concern that the litigation may at some point proceed without involvement from Hwang.

The Court is not aware of any case that extends *Evident*'s holding to a case where the co-owner of a patent is joined merely as a defendant for a claim unrelated to defending the patent. While *Evident* does appear to make another limited exception to the rule that all co-owners must join as plaintiffs, the Court does not find that this exception extends to the facts here.

Plaintiffs also argue that under *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007), Hwang's presence as a defendant is sufficient to confer standing. (Resp. at 3). But Plaintiffs' reliance on *Morrow* is misplaced. *Morrow* does not specifically discuss the situation of one co-owner refusing join the other co-owner in a patent infringement suit. *Morrow* described three general categories of plaintiffs encountered when analyzing constitutional standing in patent infringement suits: "[1] those that can sue in their own name alone; [2] those that can sue as long as the patent owner is joined in the suit; [3] and those that cannot even participate as a party to an infringement suit." *Id.* at 1339. Plaintiffs assert that here, they fall into category two. But in context, category two is primarily aimed at the case of an exclusive licensee. The *Morrow* court said that plaintiffs in category two hold "exclusionary rights," but not all substantial rights to the patent, and that "the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns." *Id.* at 1340. The *Morrow* court indicated that in cases dealing with category two plaintiffs, "joinder of the patentee is not necessary" when "the patentee is the infringer, *or the prudential concerns are not at play in a particular case*." *Id.* But these statements were made in context of a patent owner being forced to join suit with an exclusive licensee; *Morrow* does not contemplate the situation of two co-owners. Plaintiffs fall more likely into category one, as they can sue in their own name as long as any patent co-owners are also joined as plaintiffs.

Plaintiffs have not provided an exception that allows Hwang's presence as a defendant to obviate the rule that a co-owner must be joined with the other co-owner in order for there to be standing. The Court therefore declines to recognize a new exception and holds that Hwang's presence in the lawsuit as a defendant does not confer standing.

## B. *Recognized Exceptions*

In addition to arguing that Hwang's presence as a defendant confers standing, the parties also analyze the recognized exceptions to the rule that a co-owner must join as a plaintiff. The parties focus their arguments on the exception which requires a co-owner to join suit if the co-owners had an agreement waiving their rights to refuse to join the other

co-owner in an infringement suit.  *See STC.UNM*, 754 F.3d at 946 ("If, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers."). Defendants assert that neither the Royalty Agreement nor the Assignment and Agreement require Hwang to "join a patent-infringement suit or allow[] Plastronics to file suit without Mr. Hwang." (Mot. at 4). In opposition, Plaintiffs assert that the Assignment and Agreement obligates Hwang to join the suit and that Hwang waived his right to refuse to join. (Resp. at 10).

But as Defendants have correctly noted, "Plastronics does not seek and has never sought to join Mr. Hwang as a plaintiff." (Reply at 4). While the Court notes that Hwang may well have waived his right to refuse to join an infringement lawsuit through the Assignment and Agreement, the Court declines to analyze any possible waiver since Plastronics has not moved to join Hwang. And as Defendants have noted, further procedural complications may arise due to Hwang's current status as a defendant. (Reply at 4) (citing *United States v. Interstate Commerce Comm'n*, 337 U.S. 426, 430 (1949)).

## IV.    Tortious Interference

Defendants also move to dismiss Count 10—Tortious Interreference with Business Expectancy, Prospective Business Relations—arguing that this count is "predicated on patent infringement as the underlying improper conduct." (Mot. at 10). Plaintiffs respond arguing that "Plastronics' tortious interference claims against HighRel and HiCon USA are not solely confined to Defendants' patent infringement." (Resp. at 13). The Court notes that if there was anything alleged beyond patent infringement, it was dismissed pursuant to this Court's prior order. (Doc. 58 at 7–8). Because of the above dismissal of the patent infringement claims and this Court's prior order, Count 10 is dismissed.

Accordingly,

**IT IS ORDERED GRANTING** Defendants' Motion to Dismiss Counts 1 and 2 (the patent infringement counts) for lack of subject-matter jurisdiction. Count 10 is also dismissed. These counts are dismissed without prejudice.

*///*

**IT IS FURTHERED ORDERED GRANTING** Plaintiffs leave to file a second amended complaint in accord with this order and the Court's prior order (Doc. 58). The deadline for filing the second amended complaint is June 22, 2019 (thirty days from the date of this order).

Dated this 22nd day of May, 2019.

Honorable Susan M. Brnovich
United States District Judge